**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION**

| | |
|---|---|
| HEALTHCARE JUSTICE COALITION, LLC, | |
| Plaintiff, | Case No. 2:26-cv-00199-TLS-APR |
| v. | |
| UNITEDHEALTHCARE INSURANCE COMPANY, *et al.* | |
| Defendants. | |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**

Defendants UnitedHealthcare Insurance Company ("UHIC"), UMR, Inc., All Savers Insurance Company, Golden Rule Insurance Company, and United Healthcare Services, Inc. ("UHS"), (collectively "Defendants"), through their attorneys, and pursuant to Fed. R. Civ. P. 12(b)(6), respectfully move the Court to dismiss the Amended Complaint of Healthcare Justice Coalition, LLC ("Plaintiff") with prejudice.

## I.    INTRODUCTION

Plaintiff is not a healthcare advocate—it is a debt collector that purchases distressed receivables out of bankruptcy and sues on the assignments.  The Complaint reveals a straightforward scheme: Plaintiff acquired a portfolio of out-of-network provider ("OON Provider") claims, bundled them together, and now seeks to extract millions of dollars from Defendants by repackaging those aged receivables as purported underpayments.  This is particularly significant given that the OON Providers at issue were part of a private-equity-owned portfolio company that collapsed and entered bankruptcy in 2023.[1]  Plaintiff has no plausible basis to demand that Defendants (which it admits insured or administered the OON Providers' patients' health benefit plans) reimburse benefits beyond the amounts already issued under the plans' conditional reimbursement methodologies.  The Court should not permit Plaintiff's baseless attempt to recover additional benefits to which neither it nor its predecessors ever had any entitlement.  Indeed, Plaintiff's Complaint rests on the untenable premise that payors must reimburse a provider's full billed charges, even when the provider is out-of-network, certain services are not covered, and the provider has no contractual relationship with the payor.

Plaintiff asserts three claims: unjust enrichment/quantum meruit (Count I), breach of implied-in-fact contract (Count II), and suit on account (Count III), demanding the "full amount"

---

[1] *In re American Physician Partners LLC*, No. 1:23-BK-11469 (Bankr. D. Del. filed Sept. 18, 2023).

the OON Providers' billed charges. But because Plaintiff challenges benefits determinations under plans governed by the Employee Retirement Income Security Act ("ERISA") and the Medicare Act, the benefit claims are preempted and subject to dismissal.

Beyond this, Plaintiff fails to plausibly allege entitlement to additional benefit payments. The quantum meruit/unjust enrichment claims fails because (1) Defendants, as insurers or administrators had no duty to *treat* their members, (2) the statutes that Plaintiff relies on (Indiana law and *federal* EMTALA[2]) do not support an implied contract claim, and (3) Plaintiff fails to plausibly allege that Defendants received a benefit or requested the services at issue. Plaintiff's breach of implied-in-fact contract claim also fails because Plaintiff has not sufficiently alleged the existence of an implied contract. Plaintiff's account stated claim fails because Plaintiff does not plausibly allege any agreement to pay the OON Providers their billed charges.

Accordingly, the Court should dismiss Plaintiff's Complaint with prejudice.

## II.    PLAINTIFF'S BUSINESS MODEL

Plaintiff is owned by eCure, LLC. (Dkt. No. 28 ("FAC") ¶ 1.) eCure, LLC has rebranded as Allia Group.[3] Plaintiff/Allia Group describes its services to prospective clients as follows:[4]

- "[P]ioneering healthcare litigation finance platform enables providers to target underpaid insurance claims up to approximately six years old, depending on state law."

- "Want to discover what revenue your healthcare practice could recover from old A/R tied to insurer underpayments?"

- "By consolidating multiple underpaid insurance claims into large cases against specific carriers, Allia Group minimizes legal expenses while maximizing recovery from small local payors to the largest health insurance companies."

- Plaintiff/Allia provides a "bundled legal finance platform [that] pressures

---

[2] The Emergency Medical Treatment and Labor Act ("EMTALA").
[3] *See* Dkt. No. 22-1, Declaration of Amanda L. Genovese ("3/18/26 Genovese Decl."), ¶ 5, Ex. A (Dkt. No. 22-2 – Evin Levin LinkedIn).
[4] *See id.*, ¶ 6, Ex. B (Dkt. No. 22-3 – Allia Printouts).

insurers and transforms the leverage from payors to providers."

These representations reflect that Plaintiff seeks to litigate "old [accounts receivable]," including pursuing benefit claims that are time-barred under the controlling benefit plans, including those governed by ERISA and Medicare. However, when examined, Plaintiff's allegations merely recast disputes over benefit determinations Defendants made under the controlling plans. And without those plans, and without Defendants' administration of those plans, there would be no benefit claims for Plaintiff to place in dispute. Plaintiff knows this,[5] yet proceeds anyway.

## III.    ALLEGATIONS AND FACTUAL BACKGROUND

### A.    Plaintiff's Efforts To Obtain Additional Reimbursements Without Any Plausible Entitlement.

Plaintiff seeks to recover additional plan benefits relating to tens of thousands of benefit claims allegedly assigned to Plaintiff. (FAC ¶ 26; Notice of Removal ("NOR") (Dkt. No. 1) ¶ 23).) eCure LLC purchased claim "accounts" previously held by the now-defunct OON Providers, American Physician Partners and the APP Liquidating Trust (*see supra* n.1), including any right to allegedly sue for unpaid or underpaid benefits. (FAC ¶¶ 1, 26.) In promoting its services, Allia Group asserts that it "begin[s] by analyzing … claims data to identify underpaid insurance claims with the highest recovery potential." (3/18/26 Genovese Decl., ¶ 6, Ex. B.)

In this case, Plaintiff alleges that the benefit claims pertain to emergency services allegedly provided at various facilities in Indiana. (FAC ¶ 12.) Plaintiff contends the services were provided on an out-of-network basis. (*Id.* ¶¶ 16, 31.) Plaintiff concedes that unlike in-network providers, the OON Providers *do not have a contract* with insurers or plan administrators, such as Defendants,

---

[5] Plaintiff alleges claims adjudication processes occurred: "documentation includes the bills submitted by the APP physicians on industry-standard HCFA-1500 claim forms; itemized bills for all goods and services furnished to UHC's members; … written authorizations issued by UHC; and written correspondence acknowledging the receipt of the APP physicians' claims," (FAC ¶ 50), and then notes that "UHC failed to pay the APP physicians on the accounts, which have since been assigned to Plaintiff." (*Id.* ¶ 51.)

regarding the adjudication, coverage, or reimbursement of benefits. (*Id.* ¶¶ 13–15.) Nevertheless, Plaintiff/Allia Group positions its approach as helping secure better rates of payment, despite the lack of contractual rates and the terms of the operative plans themselves dictating coverage and reimbursement for out-of-network claims. (*See* 3/18/26 Genovese Decl., ¶ 6, Ex. B.)

### B. The Benefit Claims.

Although Plaintiff disclaims asserting any cause of action under ERISA, (FAC ¶ 27), a significant percentage of the benefit claims (approximately 77% of the matched claims on the Initial Claims List, as detailed *infra*) are governed by that statute. (NOR ¶¶ 25–26; 3/18/26 Genovese Decl., ¶ 13.) An additional 8% pertain to Medicare Advantage plans.[6] (NOR ¶ 27; 3/18/26 Genovese Decl., ¶ 20.) In addition to the limited list of claims attached to Plaintiff's initial Complaint, Plaintiff provided UHIC with a list reflecting further details of the nearly 35,000 benefit claims Plaintiff originally asserted ("Initial Claims List").[7] (NOR ¶¶ 20.) The Initial Claims List made clear that Plaintiff seeks to recover the difference between the OON Providers' billed charges and the "Allowed Amount" already reimbursed, *if at all*, by UHIC (or other applicable payor), which was $22.3 million. (NOR ¶ 21.) Additionally, the Initial Claims List contained detailed information regarding each claim, including patient information, insurer/claims administrator, dates of service, and—for certain claims—the claim number. (NOR ¶¶ 23–24.) Using this Initial Claims List data, UHIC matched over 50% of the claims that Plaintiff asserts. (3/18/26 Genovese Decl., ¶ 12; NOR ¶ 25.) This matching process reflects that 13,900 of the claims are governed by ERISA benefit plans (*i.e.*, plans offered by an employer) ("ERISA Claims"). (NOR ¶ 26.) Over 8,600 matched claims appear to involve self-funded ERISA plans. (3/18/26 Genovese Decl., ¶ 13.) The matching process also reflects that nearly 1,500 of the

---

[6] Neither the Complaint nor FAC disclaims any Medicare Act claims.
[7] Plaintiff has not provided any additional details regarding the new claims in the updated list.

matched claims pertain to Medicare Advantage plans ("MA Claims").  (*Id*., ¶ 19.)  Over 1,300 MA

Claims were denied based on reasons tied to "sequestration reviews" and "billed charges exceeding

the Medicare fee schedule and maximum allowable."  (*Id.*, ¶ 22.)  Among these ERISA and

Medicare Advantage plans are (1) Lowe's Companies, Inc.'s UnitedHealthcare Preventative Plus

Plan, and (2) the AARP Medicare Advantage (HMO-POS).  (*Id.*, ¶¶ 14, 21, Exs. C and D.)  The

Initial Claims List also revealed approximately 600 claims for which $0 was reimbursed.[8]  (*Id.*, ¶

15.)  And many of the benefits claims were denied for lack of coverage.[9]  (*See id.*, ¶ 18.)

In connection with the FAC, on April 8, 2026, Plaintiff filed its Updated Claims List.

(Dkt. No. 28-1.)  The Updated Claims List contains an additional 10,000 claims—for a total of

over 46,000 and seeks $28.7 million in recovery (an increase of nearly $6.5 million).  (Dkt. No.

28-1 at 1.)  As with the Initial Claims List, the Updated Claims List contains hundreds of services

for which $0 was reimbursed.  (*See generally* Dkt. No. 28-1 ("Allowed Amount").)  Defendants

insure and/or administer certain of the plans underlying the claims but do not insure or administer

all of them.  (*See* 3/18/26 Genovese Decl. ¶ 13.)  Additionally, only 6,708 of these claims relate to

plans delivered in Indiana.  (*Id.*, ¶ 16.)  Thousands of the claims occurred on or after the effective

date of the No Surprises Act, 1/1/22.[10]  (*Id.*, ¶ 17; Dkt. No. 28-1 at 1–463.)

### C.    Procedural History.

On December 23, 2025, Plaintiff initiated this action in the Marion Superior Court.  (NOR

---

[8] For example, certain claims were denied based on records indicating that the patient was insured by another carrier, requiring additional information before the claim could be processed or paid.  (3/18/26 Genovese Decl., ¶ 18.)

[9] For example, certain claims were denied because (1) the plan at issue only covered in-network routine services, (2) the participant's medical coverage was provided by a different insurer, (3) the dependent seeking services was not covered under the plan, and (4) the plan did not cover the services received.  (*Id.*, ¶ 18.)

[10] The federal No Surprises Act ("NSA"), which established a dispute resolution process for out-of-network emergency claims, such as those at issue here, was enacted as part of the Consolidated Appropriations Act, 2021 (H.R. 133), effective January 1, 2022. 134 Stat. 2759.  To the extent that Plaintiff or the OON Providers submitted a claim pursuant to the NSA, they cannot use state law to recover further. *See Worldwide Aircraft Servs. Inc. v. Conn. Gen. Life Ins. Co.*, 749 F. Supp. 3d 1204, 1217 (M.D. Fla. 2024) (in states without a law providing for method to determine amount payable, out-of-network rate is determined via IDR process or agreement between provider and insurer).

¶ 1.)  On December 29, 2025, that court docketed Plaintiff's Complaint asserting entitlement to recovery on two theories: unjust enrichment/quantum meruit (Count I), and suit on account (Count II).  (Compl. ¶¶ 11–24.)  UHIC timely removed the case to the United States District Court for the Southern District of Indiana.  (Dkt. No. 1.)  On February 27, 2026, Plaintiff moved to remand, and UHIC filed a Motion to Dismiss.  (Dkt. No. 11.)  On March 13, 2026, UHIC filed its opposition to Plaintiff's remand motion and a motion seeking jurisdictional discovery.  (Dkt. Nos. 16, 17).  On March 18, 2026, UHIC moved to dismiss the initial Complaint.  (Dkt. Nos. 22, 23).  On April 8, 2026, Plaintiff filed its FAC, adding additional Defendants, including UMR, Inc., All Savers Insurance Company, Golden Rule Insurance Company, and UHS.  (Dkt. No. 28.)  The FAC also added a breach of implied-in-fact contract claim (Count II) and moved the suit-on-account claim to Count III.  (FAC ¶¶ 37–52.)  On April 13, 2026, the U.S. District Court for the Southern District of Indiana denied as moot UHIC's motion to dismiss, in light of the FAC.  (Dkt. No. 29.)  On May 4, 2026, the U.S. District Court for the Southern District of Indiana transferred the matter to this Court.  (Dkt. Nos. 37–39.)  The motions for remand and jurisdictional discovery remain pending.

## IV.    ARGUMENT

### A.    Legal Standard.

Fed. R. Civ. P. 8(a)(2) requires that a complaint include "a short and plain statement of the claim showing that the pleader is entitled to relief."  Although Rule 8(a)(2) does not require detailed factual allegations, it does require "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action[.]"  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  In deciding a motion to dismiss under Fed R. Civ. P. 12(b)(6), this Court must determine whether the "complaint . . . contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'  A claim has facial plausibility when the plaintiff

6

pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted).

"When an exhibit incontrovertibly contradicts the allegations in the complaint, the exhibit ordinarily controls, even when considering a motion to dismiss." *Bogie v. Rosenberg*, 705 F.3d 603, 609 (7th Cir. 2013). Additionally, the Court may consider documents on a motion to dismiss where those documents are referenced in the Complaint and central to the claims. *Id.* ("In considering a motion to dismiss under Rule 12(b)(6), district courts are free to consider any facts set forth in the complaint that undermine the plaintiff's claim[, including] … documents referenced in the pleading if they are central to the claim.") (citations omitted); *Hecker v. Deere & Co.*, 556 F.3d 575, 582–83 (7th Cir. 2009) (holding district court did not err in considering "SPDs and the Trust Agreement" where the complaint referred to them explicitly and they were central to the case). Courts "are not obliged to accept as true legal conclusions or unsupported conclusions of fact." *Hickey v. O'Bannon*, 287 F.3d 656, 658 (7th Cir. 2002); *see also Ray v. City of Chicago*, 629 F.3d 660, 662 (7th Cir. 2011) (court need not accept as true mere recitations of elements of cause of action or unsupported legal conclusions).

**B.    Plaintiff's Causes Of Action Are Preempted By Multiple Federal Laws.**

As noted above, numerous benefit claims placed in dispute by Plaintiff were denied for reasons, including: (1) the applicable plan universally did not cover out-of-network services; (2) the participant's medical coverage was administered by a different insurer (*i.e.* not UHC); (3) the dependent for whom services were rendered was not covered under the plan; and (4) the plan did not cover the services received. Plaintiff cannot avoid the reality of the underlying benefit claims, Defendants' role with respect to those claims, or the controlling terms of the governing health benefit plans. Without the plans—and Defendants' administration of them—there would be no

benefit claims against Defendants' arising from services provided to members and beneficiaries, and thus no alleged benefit claims on which Plaintiff could base its suit.

Just a few months ago, a court dismissed a nearly identical lawsuit in *SM Medical Holdings Corp. v. United HealthCare Services, Inc.*, No. 25-1549 (ZNQ)(JBD), 2026 WL 540175 (D.N.J. Feb. 26, 2026). The *SM* plaintiff—materially indistinguishable from Plaintiff—purchased or was assigned provider receivables and pursued state law theories to recover allegedly underpaid claims. *Id.* at *1. As here, the plaintiff sought payment "for various medical imaging services" and submitted a "claim list" tied to receivables acquired for litigation purposes. *Id.* The defendant (UHCS) moved to dismiss based on ERISA preemption and Medicare Act preemption/exhaustion—the same grounds asserted in this action. *Id.* at *2. The court agreed and dismissed the complaint in its entirety.

As for ERISA preemption, the *SM Medical* court held that the plaintiff's claims relating to ERISA plans were preempted, explaining:

> Defendants are correct. Plaintiff's sub-claims pertaining to ERISA plans are preempted by Section 514(a) [29 U.S.C. § 1144(a)] to the extent they relate to an ERISA benefit plan. Simply stated, the Court cannot decide Plaintiff's claim as to the ERISA plans without analyzing and interpreting the plans at issue. As such, and because Plaintiff did not oppose this portion of the Motion, Plaintiff's claim as to ERISA plans will be DISMISSED WITH PREJUDICE.

*Id.* at *3 (citations omitted). With respect to the Medicare Act, the *SM Medical* court also dismissed the plaintiff's claims involving Medicare Advantage plans, holding that the state-law "accounts stated" theory was functionally a claim for Medicare Part C benefits:

> Plaintiff alleges only the accounts stated cause of action. Plaintiff characterizes it as a contract-based claim that seeks to recover the unpaid amount Dynamic billed United for various medical imaging services. Nevertheless, Plaintiff's claim is predicated on its status as an assignee of the enrollees' claims for benefits under United plans because without that status, Dynamic would have no basis for demanding payment from United. *The question with respect to this claim is whether payment of the benefits Plaintiff seeks would constitute a payment of*

8

> *benefits under Part C of the Medicare Act. Simply put, the answer is yes. As such, the Court finds that Plaintiff's claim is inextricably intertwined with claims for benefits under Part C of the Medicare Act.* The claim therefore 'arises under' the Act and is subject to Part C's mandatory administrative exhaustion requirement.

*SM Medical*, 2026 WL 540175, at \*4 (emphasis added). The same result is warranted here.

### 1. *ERISA preempts all causes of action relating to ERISA Claims.*

The Court should dismiss Plaintiff's cause of action for all ERISA Claims because Plaintiff improperly attempts to use state law to interfere with plan administration, recover ERISA plan benefits, and expand ERISA remedies.[11] ERISA provides an exclusive federal cause of action for plaintiffs who bring actions related to the recovery of benefits. *See Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 62–63 (1987); *Rush Prudential HMO, Inc. v. Moran*, 536 U.S. 355 (2002).

Thus, ERISA preempts state law claims that "relate to any employee benefit plan." 29 U.S.C. § 1144(a). Claims relate to a plan in two ways: claims that have a "reference to" an ERISA plan, and claims that have an impermissible "connection with" a plan. *Egelhoff v. Egelhoff ex rel. Breiner*, 532 U.S. 141, 147 (2001) ("law relates to an ERISA plan 'if it has a connection with or reference to such a plan'" (quoting *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 97 (1983)). "This generally encompasses two categories of state laws[:]" (1) state laws that "act[] immediately and exclusively upon ERISA plans ... or where the existence of ERISA plans is essential to the law's operation" and (2) "state statute[s] or claim[s] that, while not facially tied to ERISA, govern[] ... a central matter of plan administration or interfere[] with nationally uniform plan administration." *Halperin v. Richards*, 7 F.4th 534, 541 (7th Cir. 2021) (citations and internal quotation marks omitted). The latter category of preempted laws includes "state-law causes of action seeking 'alternative enforcement mechanisms' as an end run around ERISA's more limited remedial

---

[11] The ERISA plans meet the relevant criteria of 29 U.S.C. § 1002(1) because the plans are established by employers to provide medical benefits. "ERISA Claims" includes any unmatched claims related to ERISA-governed plans. The Court should issue an order dismissing any/all such claims.

scheme". *Id.*; *see also Sandefur v. Iron Workers St. Louis Dist. Council Pension Fund*, No. 3:14-CV-00175-RLY, 2015 WL 4232490, at \*4 (S.D. Ind. July 13, 2015) (finding ERISA preempted claim against benefit fund alleging it "fraudulently misrepresented itself by telling her she was not a qualified spouse under the Pension Plan"); *Emerus Hosp. Partners, LLC v. Health Care Serv. Corp.*, 41 F. Supp. 3d 695, 700 (N.D. Ill. 2014) (because provider lacked contract with insurer setting payment rate, "the parties dispute[d] the right to payment," such that state law statutory claim for usual and customary rate under was not independent of ERISA plan).

Here, Plaintiff's causes of action have the requisite connection to ERISA plans because Plaintiff cannot use state statutory or common law claims to impose additional benefit reimbursement obligations on ERISA plans beyond the amount of coverage and beyond what the reimbursement methodology dictated in the relevant plan affords. *See Halperin*, 7 F.4th at 541; *Pohl v. Nat'l Benefits Consultants, Inc.*, 956 F.2d 126, 128 (7th Cir. 1992) (ERISA preempted claims of oral misrepresentation of coverage because "money … obtained … would be functionally a benefit" the plan terms do not provide. "This type of end run is regularly rebuffed."); *Smith v. Provident Bank*, 170 F.3d 609, 615 (6th Cir. 1999) (ERISA preempted "claims [that] merely attach[ed] new, state-law labels to the ERISA claims for breach of fiduciary duty and recovery of benefits").

Plaintiff impermissibly seeks to use state law to impose additional reimbursement obligations on the plans beyond what the plans determined was authorized under plan terms. Plaintiff alleges that the OON Providers conferred benefits on Defendants by treating their *insured* members and Defendants were unjustly unenriched. (FAC ¶¶ 33–35.) Plaintiff also contends that Defendants breached an implied contract by "paying unreasonably low amounts for medically necessary emergency services." (FAC ¶¶ 37–46.) Likewise, Plaintiff's suit on account claim

alleges underpayment of the OON Providers' claims, which were submitted for adjudication and reimbursement by Defendants, as the insurers or administrators of the OON Providers' patients. (*Id.* ¶¶ 48–51.)  This attempts an end run around ERISA's enforcement mechanism and directly attacks the benefits determinations—a central matter of plan administration.

Similarly, Plaintiff's claims are dependent on the governing plans for ERISA Claims. Defendants were only allegedly obligated to make benefit determinations and payments on behalf of the members covered by the ERISA plans because of those plans.  Indeed, Plaintiff concedes as much.  (*See* FAC ¶ 31 (alleging Defendants were obligated to provide emergency care "by law and *under the terms of [UHIC]'s health care contracts and/or insurance policies*") (emphasis added).) Absent the ERISA plans, therefore, Defendants would have had no connection to the plan members/participants (OON Providers' patients) and thus no obligation to adjudicate claims or reimburse benefits for any covered services.  *See AMISUB (SFH), Inc. v. Cigna Health & Life Ins. Co.*, 142 F.4th 403, 408 (6th Cir. 2025) ("Start with the obvious proposition that uninsured patients are responsible for the full value of their care. Cigna only enters the picture if it contracts with patients to shoulder the burden of paying for their care.").  So even if Plaintiff had not mentioned the ERISA plans at all, their claims still would not exist independently of the ERISA plans.  *See John Muir Health v. Health Care Serv. Corp.*, No. 22-CV-6963, 2023 WL 4707430, at \*4 (N.D. Ill. July 24, 2023) (because claims for breach of an implied-in-fact contract, and quantum meruit were premised "on the alleged non-payments *or underpayments* by Defendants for medical services," the provider's entitlement to "damages depends on what benefits and payments are owed under the relevant ERISA plans") (emphasis added).[12]  The same is true with respect to the

---

[12] Plaintiff does not assert a *rate* of payment claim.  Plaintiff concedes, (FAC ¶¶ 16, 36), that it had no contract with Defendants, so the dispute here concerns right of payment.  *Emerus*, 41 F. Supp. 3d at 700 (because provider lacked contract with insurer setting payment rate, "the parties dispute[d] the *right* to payment").  Regardless, hundreds of Plaintiffs' claims were denied in full, signaling a coverage dispute.  (3/18/26 Genovese Decl., ¶ 18; Dkt. No. 28-1.)

11

implied-in-fact contract claim. "[C]laims for breach of contract are preempted by ERISA and should be dismissed when they relate to or have a connection with a plan governed by ERISA." *Oplchenski v. Parfums Givenchy, Inc.*, No. 05 C 6105, 2007 WL 1933149, at *3 (N.D. Ill. June 27, 2007). As stated above, absent the ERISA plans, Defendants would have no connection to the plan members/participants, who received the services that Plaintiff seeks full payment for, meaning the implied-in-fact contract claim is preempted. *See, e.g.*, *Nw. Mem'l Healthcare v. Anthem Blue Cross & Blue Shield LLC*, No. 24 C 2777, 2025 WL 1455823, at *4–5 (N.D. Ill. May 21, 2025) (finding breach of implied contract claims preempted where defendant "allegedly underpaid, or did not pay at all, on the Patients' healthcare claims because of a dispute over whether the services" were medically necessary because claims impermissibly related to and had a connection with an ERISA plan); *John Muir Health*, 2023 WL 4707430, at *4.

Plaintiff's state law causes of action are preempted as to all ERISA Claims.

### 2.    *The Medicare Act requires dismissal of all MA Claims.*

#### a.    *The Medicare Act preempts Plaintiff's causes of action.*

Plaintiff's cause of action for all MA Claims[13] should be dismissed.[14] The Medicare Act gives beneficiaries the option to receive benefits in two ways: (1) participating in Medicare Parts A and B and have "CMS [the Centers for Medicare & Medicaid Services] directly pay medical providers for [her] hospital and outpatient care," or (2) participating in a Medicare Part C plan (a Medicare Advantage plan), and have a Medicare Advantage Organization ("MAO"), like UHIC provide benefits. *Humana Med. Plan, Inc. v. W. Heritage Ins. Co.*, 832 F.3d 1229, 1233 (11th Cir. 2016). Congress ensured uniformity of this program by expressly preempting any state laws or causes of action that relate to, challenge, or regulate MAOs' compliance with Medicare standards.

---

[13] "MA Claims" includes any unmatched claims related to Medicare-governed plans.
[14] Plaintiff has asserted that it *will* dismiss all Medicare-related claims. (*See* Motion to Remand (Dkt. No. 11) at 19.)

*See* 42 U.S.C. § 1395w-26(b)(3); 42 C.F.R. § 422.402; 70 Fed. Reg. 4588, 4665 (Jan. 28, 2005).

The Medicare Act "supersede[s] any State law or regulation (other than State licensing laws or State laws relating to plan solvency) with respect to MA plans which are offered by MA organizations," 42 U.S.C. § 1395w-26(b)(3), "including those established through case law," 70 Fed. Reg. at 4665, state "common law," and statutory claims, *Uhm v. Humana, Inc.*, 620 F.3d 1134, 1156 (9th Cir. 2010). A plaintiff cannot circumvent the Medicare Act's requirements by rebranding their Medicare claims under a different name. *See*, *e.g.*, *Aylward v. SelectHealth, Inc.*, 35 F.4th 673, 681 (9th Cir. 2022) (Medicare Act preempts "any state law duty that would impose obligations on MA plans on th[e] same subject" as relevant Medicare Act regulations "whether or not [such claims] would be inconsistent with federal regulations"); *Mayberry v. Walgreens, Co.*, No. 17 C 1748, 2017 WL 4228205, at *2 (N.D. Ill. Sept. 21, 2017) (holding "scope of Medicare Act preemption is very broad" and Medicare Act preempted "claims … that [d]efendants cost [plaintiff] money by failing to bill insulin under the proper part of the Medicare Act").

Further, a claim is "inextricably intertwined" with one for Medicare benefits if it does not involve issues separate from a claim of entitlement to benefits. *Uhm*, 620 F.3d at 1141–43 (breach of contract claim "premised on" insurer's "'fail[ure] to provide prescription drug benefits as promised'" and unjust enrichment claim alleging insurer "received monies … for prescription drug benefits that [insurer] failed to provide" arose under the Medicare Act because they were "at bottom, merely creatively disguised claims for benefits"); *Glob. Rescue Jets, LLC v. Kaiser Found. Health Plan, Inc.*, 30 F.4th 905, 919 (9th Cir. 2022) (consumer-protection claim rested "directly on the interpretation of benefits provided under Kaiser's Medicare Advantage plans" because, on plaintiffs' theory, Kaiser's failure to pay benefits would violate its Medicare Act obligations); *Zhang v. UnitedHealthCare*, No. CV-20-02064, 2021 WL 3270319, *2 (D. Ariz. July 30, 2021)

13

(alleged delay in approving benefits cannot be "disentangle[d]" from Medicare benefits decision).

Here, Plaintiff's state law claims seek to upend benefits payment determinations for MA Claims, which the Medicare Act prohibits. *See Mayberry*, 2017 WL 4228205, at *3 (dismissing claims as preempted because "claims in this action amount to nothing more than a back-door attempt to recover benefits indirectly from [d]efendants for amounts that [plaintiff] contends he would have received from Medicare under Part B"). MA Claims are subject to "extensive regulations" set by CMS, *e.g.*, *Morrison v. Health Plan of Nev., Inc.*, 328 P.3d 1165, 1167 (Nev. 2014) (citing 42 U.S.C. § 1395w-26(b)(1) (2012)), which dictate the appropriate process for MAOs to review claims for benefits and make coverage determinations. Plaintiff attempts to avoid these reticulated regulations by demanding reimbursement for out-of-network services using state law causes of action untethered from operative Medicare laws, rules, and regulations. That is precisely what the Medicare Act's preemption provision prohibits. *Aylward*, 35 F.4th at 681.

Indeed, Plaintiff's claims each seek to obtain additional benefits either in accordance with the Medicare Advantage plans or beyond that which the plans require. This is an impermissible use of state law causes of action. *See Uhm*, 620 F.3d at 1143 (breach of contract claim premised on alleged failure "to provide prescription drug benefits as promised" and unjust enrichment claim alleging receipt of "monies as a result of payments made by [the plaintiffs] for prescription drug benefits that Humana failed to provide" arose under the Medicare Act because they were "at bottom, merely creatively disguised claims for benefits"); *Aylward*, 35 F.4th at 681 ("because the standards established under [Medicare] Part C expressly prescribe the relevant duties of MA plans … those standards 'supersede' any state law duty that would impose obligations on MA plans on that same subject"); *Zhang*, 2021 WL 3270319, *2 (MAO's alleged delay in approving benefits cannot be "disentangle[d]" from Medicare benefits decision). Moreover, the OON Providers were obligated

14

to accept the Medicare-approved rate as full payment. *See Glob. Rescue Jets*, 30 F.4th at 910 ("if [an] enrollee needs ambulance or other emergency services," "Medicare Advantage plans must pay for services rendered to plan enrollees even if the provider does not have a contract with the plan ... If the services would have been covered under Parts A and B, the plan is obligated to pay these 'non-contract providers' at least the Medicare-approved rate,  and the non-contract provider is obligated to accept the Medicare-approved rate as payment in full.") (citations omitted).  Plaintiff's demand for billed charges contradicts the Medicare Act and Medicare laws, rules, and regulations.[15]

### b.      *Plaintiff asserts unexhausted claims.*

All of the MA Claims also fail due to the Medicare Act's exhaustion requirement, "42 U.S.C. § 405(h), [which] makes judicial review under a related provision, 42 U.S.C. § 405(g), the sole avenue for judicial review for claims arising under the Medicare Act."  *Uhm*, 620 F.3d at 1140(internal quotations omitted).  "The Supreme Court has held that the exhaustion requirement of § 405(g) consists of a non-waivable requirement that a claim for benefits shall have been presented to the Secretary, and a waivable requirement that the administrative remedies prescribed by the Secretary be pursued fully by the claimant."  *Id.*  "Only once the Secretary has issued a final decision may the individual seek judicial review of that determination.  A final decision is rendered only after the individual has pressed his claim through all levels of administrative review."  *Id.* (internal quotations and citations omitted).

---

[15] More than 1,300 of the matched MA Claims were denied based on reasons tied to "sequestration reviews" and "billed charges exceeding the Medicare fee schedule and maximum allowable." (3/18/26 Genovese Decl., ¶ 22.) Medicare sequestration requires a mandatory 2% reduction in Medicare fee-for-service and Medicare Advantage payments.  In addition, the Medicare fee schedule—and thus the maximum allowable payment—is set annually by CMS. CMS establishes payment rates using the Resource-Based Relative Value Scale, which accounts for physician work, practice expenses, and malpractice insurance costs.  In other words, in its role as a MAO, UHIC was required to conduct sequestration reduction reviews and to apply the CMS-issued Medicare fee schedule.  UHIC did so precisely because it is contractually obligated to CMS to administer Medicare benefits in accordance with CMS rules and payment methodologies. *See Silverado Hospice, Inc. v. Azar*, Case No. SA CV 19-100, 2020 WL 6821073, at *7 (C.D. Cal. Oct. 30, 2020) (in correctly applying the mandated sequestration reduction, "CMS and the Medicare contractor NGS did exactly what Congress required pursuant to both the Medicare Act and the Budget Control Act").

In *SM Medical*, the court dismissed an account stated cause of action, explaining "Plaintiff's claim is inextricably intertwined with claims for benefits under Part C of the Medicare Act" because the "payment of the benefits Plaintiff seeks to recover would constitute a payment of benefits under Part C of the Medicare Act." *SM Med. Holdings Corp. v. Care Improvement Plus*, No. CV 24-6607 (ZNQ) (JBD), 2025 WL 2992399, at *2 (D.N.J. Oct. 24, 2025). So, too, here. Plaintiff's causes of action are inextricably intertwined and therefore "arise[] under" the Medicare Act and are subject to mandatory administrative exhaustion requirement. Nonetheless, Plaintiff does not allege that it presented its claim to the appropriate agency or engaged at all in Medicare's administrative review process; this further demands dismissal.[16]

### C.      Plaintiff Fails To Plausibly Allege Claims For Relief.

#### 1.      *Plaintiff does not plausibly allege entitlement to benefits under an unjust enrichment/quantum meruit theory.*

Plaintiff's quantum meruit/unjust enrichment claim is baseless. Indiana law "often uses the terms 'quantum meruit' and 'unjust enrichment' interchangeably." *Lash v. Kreigh*, 202 N.E.3d 1098, 1102 (Ind. Ct. App. 2023); *see Reed v. Reid*, 980 N.E.2d 277, 296 (Ind. 2012) ("Also referred to as quantum meruit or quasi-contract, unjust enrichment requires a party who has been unjustly enriched at another's expense to make restitution to the aggrieved party."). Whether described as quantum meruit or unjust enrichment, "a plaintiff must show that (1) he rendered a  benefit to the defendant at the defendant's express or implied request, (2) the plaintiff expected payment from the defendant, and (3) allowing the defendant to retain the benefit without restitution would be unjust." *Est. of Sain v. Sain*, 254 N.E.3d 1136, 1140 (Ind. Ct. App. 2025) (citing *Reed*, 980 N.E.2d at 296 and *Bayh v. Sonnenburg,* 573 N.E.2d 398, 408 (Ind. 1991) (quotation marks omitted)).

---

[16] To the extent that the Court were to conclude that Plaintiff's failure to exhaust the Medicare Act claims deprives it of jurisdiction, any dismissal would be pursuant to Fed. R. Civ. P. 12(b)(1).

Plaintiff's claim is premised on Defendants alleged obligation by law and/or the terms of the relevant insurance policies to provide insureds with *care*.  (FAC ¶ 31.)  But Plaintiff offers no authority that Defendants were obligated to provide *care* (versus benefits) and the statutes Plaintiff relies on contain no such obligation.  For example, Plaintiff, (FAC ¶ 30), cites Ind. Code § 27-1-2.2-10,[17] but that statute requires only *coverage* for emergency services.  *See, e.g.*, *AMISUB*, 142 F.4th at 409–10 (statutory provision "'coverage' … for … emergency services … does not impose a duty on insurers to cover the full cost of their members' out-of-network emergency care").  Similarly, Ind. Code § 27-1-37.5-24 concerns utilization review requirements.  Moreover, Plaintiff alleges, (FAC ¶ 29), that EMTALA requires doctors to provide emergency services to patients presenting at the emergency department.  But EMTALA does not provide an equivalent obligation for Plaintiff to sue Defendants for plan coverage or plan benefits.  *See AMISUB*, 142 F.4th at 410 ("River Park Hospital entered the implied contract by virtue of EMTALA"); *see also Torretti v. Main Line Hosps., Inc*., 580 F.3d 168, 172 (3d Cir. 2009) ("EMTALA requires hospitals to give certain types of medical care to individuals presented for emergency treatment....").

Beyond this, Plaintiff's Complaint does not plausibly allege the elements of the claims.  As noted above, Plaintiff must plausibly allege that "(1) [the providers] rendered a benefit to the defendant at the defendant's express or implied request, (2) the plaintiff expected payment from the defendant, and (3) allowing the defendant to retain the benefit without restitution would be unjust."  *Sain*, 254 N.E.3d at 1140 (quotations and citations omitted).  Plaintiff fails to do so.

*First*, Defendants received no benefit, which forecloses Plaintiff's claim.  *See Healthcare Just. Coal. DE Corp. v. Cigna Health & Life Ins. Co*., No. 3:23-cv-01689, 2025 WL 1424905, at *5 (D. Conn. May 15, 2025) (dismissing claim with prejudice by Plaintiff's affiliate because "like

---

[17] As noted above, there are benefit claims for plans delivered out of state, rendering the application of Indiana law untenable.  (3/18/26 Genovese Decl., ¶ 16.)

unjust enrichment, quantum meruit requires that the defendant received some benefit from the plaintiff. That is the same element that the Court has concluded HJC has failed to plead in the unjust enrichment context."), *appeal withdrawn*, 2025 WL 2851736 (2d Cir. Sept. 22, 2025). Certainly, "it would misunderstand the nature of insurance to suggest that doctors are fulfilling an *insurer's* obligation by providing care … because the insurer's obligation is to cover medical expenses, *not* to provide treatment." *Id.* (physicians did not "confer[] a benefit on [insurer] by treating its members," so HJC did "not plausibly allege[] … an unjust enrichment claim"). Accordingly, courts routinely dismiss similar claims brought by out-of-network providers against defendant-insurers/plans because the provider only confers a benefit on its patients and not on the insurer. *See Marque Medicos Farnsworth, LLC v. Liberty Mut. Ins. Co.*, 2018 IL App (1st) 163351, ¶ 17 (holding under Illinois law that "providers … failed to state a cause of action for breach of contract implied in law" because "the complaint alleges no facts specifying the benefit the providers bestowed on defendants; they provided a benefit—namely, medical services—only to the injured employee"); *Advanced Orthopedics and Sports Med. Inst. v. Anthem Blue Cross Life and Health Ins. Co.*, 2018 WL 6603650, at *4 (D.N.J. Dec. 14, 2018) (dismissing medical provider's quantum meruit claim "because the benefit at issue was conferred upon [the patient], not the [insurer]"). Indeed, because Plaintiff is suing based on emergency services allegedly provided to "members" of Defendants' health care plans, (FAC ¶¶ 31, 33), Plaintiff cannot meet the elements of a quantum meruit claim.

*Second*, Defendants did not request the services—rather, the patients sought and obtained services, which the patients benefited from. *See Barlow Respiratory Hosp. v. Cigna Health & Life Ins. Co.*, Case No. 2:15–CV–08411, 2016 WL 7626446, at *3 (C.D. Cal. Sept. 30, 2016) ("It is undisputed that Defendant did not request that Plaintiff provide C.S. with medical services.

18

Rather, C.S. requested medical services from Plaintiff, who then contacted Defendant to verify C.S.'s coverage eligibility. The undisputed facts thus show that Plaintiff cannot establish the third element of its quantum meruit claim."). Plaintiff alleges no facts regarding whether Defendants knew of the medical services at issue before they were performed. To the contrary, Ind. Code § 27-1-37.5-24 allows providers to notify insurers of "the emergency admission or provision of the emergency health care service" within "twenty-four (24) hours (excluding weekends and state and federal legal holidays)."

Similarly, Plaintiff does not plausibly allege that the OON Providers expected coverage and benefit payments from Defendants at the time services were rendered. As the Sixth Circuit noted in *AMISUB*, if a patient does not have insurance (or to the extent a patient seeks treatment beyond the limits of its insurance contract), the patient, not the insurer, is responsible to pay. 142 F.4th at 408 ("Start with the obvious proposition that uninsured patients are responsible for the full value of their care. Cigna only enters the picture if it contracts with patients to shoulder the burden of paying for their care."). Accordingly, the OON Providers (and thus Plaintiff) can only expect benefit payments from an insurer if it knows that the patient at issue is covered by a plan insured or administered by the insurer/administrator. But as Plaintiff concedes, emergency room physicians must stabilize *all* patients, regardless of insurance. And Plaintiff alleges no facts to allow an inference that any of the OON Providers expected payment from Defendants.

Thus, Plaintiff's quantum meruit and unjust enrichment claim fails.

### 2. *Plaintiff's implied-in-fact contract claim fails.*

Plaintiff fails to plausibly allege a breach of implied contract because the FAC allegations reflect that Defendants never agreed to pay Plaintiff the full amount. To plausibly allege an implied contract, Plaintiff must allege a course of dealing involving some back-and-forth or

19

affirmative conduct by both parties to demonstrate an implied agreement to pay in full. *McCart v. Chief Exec. Officer, Ind. Fed. Cred. Union*, 652 N.E.2d 80, 85 (Ind. Ct. App. 1995) ("a contract implied in fact arises out of acts and conduct of the parties, coupled with a meeting of the minds and a clear intent of the parties in the agreement."); *Wakley v. Sustainable Loc. Foods LLC*, No. 1:16-CV-0884-WTL-DKL, 2017 WL 1880814, at *3 (S.D. Ind. May 9, 2017) (dismissing breach of implied contract claim because complaint failed to allege facts regarding parties' conduct expressing an agreement). And mere allegations that an insurer verified coverage to a provider is, by itself, "not a promise to pay a certain amount." *Nw. Mem'l Healthcare v. Anthem Ins. Cos., Inc.*, No. 21 C 6306, 2022 WL 1620025, at *2 (N.D. Ill. May 23, 2022) (citations omitted).

Plaintiff identifies no conduct by Defendants to allow an inference of an agreement to pay in full. Plaintiff alleges that Defendants had an implied agreement to pay the "reasonable, usual and customary value for the emergency care provided" on the basis that (1) Defendants provided health insurance to its members, understanding some of its members may require emergency medical services, (2) Defendants issued an insurance policy to members representing Defendants would reimburse healthcare providers for emergency services, (3) Defendants issued identification cards to its members to present at hospitals, and (4) the OON Providers billed Defendants for emergency medical services provided to Defendants' members and/or insureds. (FAC ¶¶ 40–41.) Plaintiff also alleges that "[Defendants] instead paid far lower amounts" than the amount billed and "less than the reasonable value." (FAC ¶¶ 17, 44.)

Plaintiff's description of Defendants' general practices as insurers/administrators, as well as the OON Providers' billing practices, fails to show a meeting of the minds on the amount due. Not only does Plaintiff not allege that Defendants ever paid the full amount billed, the only conduct Plaintiff describes was that Defendants allegedly paid "far lower amounts" than what the OON

Providers billed. At most, the parties' course of dealing suggests that Defendants consistently paid less than the billed charges, undermining any inference that Defendants agreed to pay Plaintiff in full. (FAC ¶ 49.) Absent conduct demonstrating "clear intent" of an agreement to pay Plaintiff in full, Plaintiff fails to show the existence of an implied-in-fact contract.

Plaintiff also fails to establish consideration. Plaintiff alleges "[c]onsideration for the implied agreement was also created when APP rendered services to [Defendants'] members, and when [Defendants] failed to fully pay APP for those services to APP's detriment." (FAC ¶ 42.) But these allegations are insufficient to establish consideration because Defendants' payments were made pursuant to the relevant benefit plans. *See, e.g.*, *Jarrett v. Upperline Health, Inc.*, No. 1:23-CV-01261, 2025 WL 3067545, at *8 (S.D. Ind. Aug. 8, 2025) ("[A] promise to do what one 'is already bound to do by law or by contract' is insufficient consideration." (citation omitted)); *Nw. Mem'l Healthcare v. Highmark Blue Cross Blue Shield*, No. 25-CV-02481, 2026 WL 562727, at *4 (N.D. Ill. Feb. 28, 2026) (finding allegations that plaintiff incurred detriment by not receiving full payment for medical services insufficient to show consideration as "consideration cannot flow from an act performed pursuant to a preexisting legal duty" and argument "improperly conflat[ed] … consideration with the detriment suffered when an agreement is breached" (quotations and citations omitted)). Accordingly, Plaintiff has failed to allege the existence of an implied contract.

### 3. *Plaintiff's suit on account claim fails.*

Plaintiff fails to plausibly allege any agreement that the OON Providers were entitled to the full amount of their bills. To avoid dismissal, Plaintiff must plausibly allege "an agreement between the parties that all items of an account and balance are correct, together with a promise, expressed or implied to pay the balance." *See MHC Surgical Ctr. Assocs., Inc. v. State Off. of Medicaid Pol'y & Plan.*, 699 N.E.2d 306, 309 (Ind. Ct. App. 1998) (holding account stated claim

21

requires pleading of "an agreement between the parties that all items of an account and balance are correct, together with a promise, expressed or implied to pay the balance"). Without express agreement between the parties that the account is correct, such an "agreement may be inferred from the delivery of the statement coupled with the recipient's failure to object within a reasonable period of time," but "each party to the transaction must view the account as a final adjustment of the respective demands between them." *Id.* at 309–10 (citing *Urbanational Developers, Inc. v. Shamrock Eng'g, Inc.*, 372 N.E.2d 742, 750 (Ind. Ct. App. 1978) and holding that provider's submissions "seeking reimbursement for the Medicaid services provided" did not create account stated because the providers "did not submit the claims [to state Medicaid office] with the understanding that they would be considered … as a final adjustment of the demands … . Rather, [the p]roviders were aware that the [office] would have to consider each claim individually to determine whether the [p]roviders were entitled to reimbursement").

> In *SM Medical*, the court dismissed an account stated claim and held,

> Plaintiff has not sufficiently alleged that Defendant made *any* promise to pay the amount Plaintiff alleges is due. Plaintiff only alleges that 'Defendant ... did promise to pay ... the Plaintiff said sum upon demand.' (*See* Compl. First Count, ¶ 4.) "[T]he Complaint contains no details on the alleged authorization, especially on what [Defendant] supposedly agreed to pay for. Without providing any information on [Defendant's] supposed promise to pay, [Plaintiff's] account stated claim fails.'

2026 WL 540175, at *4 (emphasis in original).

Plaintiff's claim fails multiple times over. Plaintiff's claim is premised on the OON Providers' submission of documentation to Defendants (including claims forms, itemized bills, and correspondence regarding the claims at issue). (FAC ¶ 50.) But simply *submitting* a claim for adjudication under a health benefits plan is not enough. Rather, the parties to the transaction must have an express agreement as to the amount due or "must view the account as a final adjustment of the respective demands between them." *MHC*, 699 N.E.2d at 309–10. And that meeting of the

22

minds is absent when the provider knows that the insurer has "to consider each claim individually to determine whether [a provider is] entitled to reimbursement." *Id.*

Here, Plaintiff expressly alleges that Defendants "usually" paid part of each claim, but "typically less than the full amount." (FAC ¶ 49.) Thus, Plaintiff concedes that (1) Defendants never agreed to reimburse plan benefits at the full amount of the claims (or any particular amount) and (2) Defendants considered each claim individually under the operative health plans to determine whether (and how much) it would be reimbursed, rather than simply paying the billed amount. This concedes that the parties did not view the claims as the final adjustment of the amount due). The lack of express or implied agreement means that the suit on account should be dismissed.

### D. Plaintiff did not properly join the new Defendants.

The Court should also dismiss the newly added Defendants to the extent that they would destroy diversity because Plaintiff did not seek leave of Court to join them. Fed. R. Civ. P. 15(a)(1)(B) allows amendment within 21 days of a motion under Fed. R. Civ. P. 12. However, 28 U.S.C. § 1447(e) provides that where a post-removal joinder "would destroy subject matter jurisdiction, the court may deny joinder, or permit joinder and remand the action." Accordingly, "most courts agree that plaintiffs cannot destroy diversity through amendment as a matter of right. Instead, courts have concluded that when a plaintiff adds a non-diverse defendant following removal, § 1447(e) applies even if the amendment would otherwise be permissible as a matter of course under Rule 15(a)(1)." *Mullane v. Portfolio Media, Inc.*, No. CV 19-11496-PBS, 2019 WL 12316202, at *7, 11 (D. Mass. Nov. 19, 2019) (denying joinder) (citations and internal quotation marks omitted); *Beil v. Illinois Mun. League Risk Mgmt. Ass'n*, No. 16-CV-356-JPG-PMF, 2016 WL 3999895, at *3 (S.D. Ill. July 26, 2016) (dismissing defendant "[t]o cure … unauthorized joinder"); *see also Schur v. L.A. Weight Loss Centers, Inc.*, 577 F.3d 752, 759 (7th Cir. 2009)

("district court may not permit joinder of a nondiverse defendant *and* retain jurisdiction").

Plaintiff contends that it is a citizen of, *inter alia*, Connecticut, Indiana and Minnesota, (*see* Dkt. No. 11-2 ¶ 7), yet it nevertheless sought to join the new Defendants, each of which it claims to have citizenship in at least one of these states. (FAC ¶¶ 3–8.[18]). Although Defendants dispute Plaintiff's citizenship for the reasons noted in UHIC's opposition to Plaintiff's remand motion, *see* Dkt. No. 17 at 7–14, and Plaintiff has not sought remand based on the new Defendants, Plaintiff was still obligated to seek leave. Its failure to do so requires dismissal.[19]

Even if Plaintiff sought leave, it should be denied. A plaintiff seeking an amendment bears the burden of providing that the amendment is proper. *Mullane*, 2019 WL 12316202, at *8 (collecting cases); *Ebersohl v. Bechtel Corp.*, No. CIV.09-1029-GPM, 2010 WL 2164451, at *4 (S.D. Ill. May 31, 2010) (directing parties to brief whether amendment was permissible and that plaintiff "will have the burden of proving … joinder … is proper under … § 1447(e)") *modified*, 2010 WL 2220590 (S.D. Ill. June 3, 2010). To exercise its discretion, this Court must "balance the equities to make the determination," considering factors including: "(1) the plaintiff's motive for seeking joinder, particularly whether the purpose is to defeat federal jurisdiction; (2) the timeliness of the request to amend; (3) whether the plaintiff will be significantly injured if joinder is not allowed; and (4) any other relevant equitable considerations." *Schur*, 577 F.3d at 759. "If a plaintiff amended simply to destroy diversity, the district court should not remand." *Schillinger v. Union Pac. R.R. Co.*, 425 F.3d 330, 333 (7th Cir. 2005).

While Plaintiff amended before the deadline in Rule 15(a)(1)(B), the other factors weigh against amendment. "Courts have warned that motions to join non-diverse defendants, when filed promptly after removal and with little intervening discovery, may represent 'tactical maneuvers'

---

[18] Although the FAC does not allege citizenship for UHS, it is a Minnesota corporation.
[19] If Court agrees with UHIC that there are non-diversity jurisdictional grounds for this case, leave is unnecessary.

24

rather than substantive amendments based on newly discovered facts." *Mullane*, 2019 WL 12316202, at *9; *Beil*, 2016 WL 3999895, at *3 (timing of amendment weighed against leave where amended complaint was filed long after plaintiff learned about later-joined party yet immediately after removal (citing *Schur*, 577 F.3d at 767)).  Here, Plaintiff amended shortly after briefing on remand, after Defendant moved to dismiss, and after Defendant sought jurisdictional discovery, with no intervening discovery and despite prior knowledge of the new Defendants. *Member Select Ins. Co. v. Cub Cadet, LLC*, No. 2:16-CV-436-JD-PRC, 2017 WL 563161, at *3 (N.D. Ind. Feb. 13, 2017) (denying leave to amend because plaintiff sought to add party "in order to return this litigation to state court, and thus, that the requested amendment to add the [party] was brought in bad faith").  Similarly, Plaintiff cannot assert that it would be prejudiced by denial of amendment.  *See Ohrn v. JDPHD Inv. Grp., LLC*, No. 1:12-CV-00620-TWP, 2012 WL 5331231, at *2 (S.D. Ind. Oct. 29, 2012) (denying motion for leave to amend non-diverse defendants where plaintiff could obtain complete relief for claims without later-added non-diverse defendants).  Finally, the background in UHIC's remand opposition counsels against leave.  eCure created Allia 770—an entity controlled by eCure—and purported to rapidly add members across the country who happen to share citizenship with the entities Plaintiff is suing—contemporaneously with bringing these claims.  *See* Dkt. No. 11-2 at ¶¶ 4–7; Dkt. No. 17 at 12–14.  The Court should dismiss the non-UHIC Defendants.  *See Beil*, 2016 WL 3999895, at *3 (dismissing defendant "[t]o cure … unauthorized joinder").[20]

## V.   CONCLUSION

For the foregoing reasons, the FAC should be dismissed with prejudice.

---

[20] The amendment would also be futile as detailed *supra* because the claims are preempted and/or implausible.

DATED: June 25, 2026

Respectfully submitted,

SEYFARTH SHAW LLP


By: */s/ Jules A. Levenson*

Jules A. Levenson
jlevenson@seyfarth.com
SEYFARTH SHAW LLP
233 South Wacker Drive, Ste. 8000
Chicago, Illinois 60606
Telephone: (312) 460-5000
Facsimile: (312) 460-7000

Amanda L. Genovese (*pro hac vice forthcoming*)
Torrey Young (*pro hac vice forthcoming*)
agenovese@seyfarth.com
tkyoung@seyfarth.com
SEYFARTH SHAW LLP
620 8th Avenue, 32nd Floor
New York, NY 10018
Telephone: (212) 218-5500
Facsimile: (212) 218-5526

*Attorneys for Defendants*

26

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on June 25, 2026, the foregoing was filed with the Court's CM/ECF system, which will send a notification of filing to all counsel of record.

<u>*/s/Jules A. Levenson*</u>
Jules A. Levenson